STANDARD EXTRACT CO. v. H. BELMER CO.

**Negligence Concurring with Act of God Submitted to Jury.**
> One whose negligence, concurring with an extraordinary occurrence in the natural world resulted in serious loss, cannot be held liable for the damage so sustained; but the question whether the two causes concurred in bringing about the loss should be submitted to the jury.

*Thomas K. Schmuck,* for plaintiff in error.
*Fulton & Woost,* for defendant in error.

**GORMAN, J.**

This was an action in the common pleas court brought by plaintiff in error to recover damages from the defendant in error for the value of goods injured, and also injury to the business of plaintiff in error.

In January, 1913, the plaintiff in error rented from the Henry estate and occupied the second and third floors of the

building known as No. 10 East Second street in Cincinnati, and the defendant in error rented from the same landlord and occupied the cellar and first floor of said premises. There was a party wall on the west side of the building, separating it from another building owned by the Henry estate and occupied in part or in whole by one Klum.

Plaintiff in error sets up in its amended petition that it gave permission to defendant in error to store temporarily on the third floor of the premises on January 13, 1913, about six hundred and fifty kegs of nails, each keg weighing from seventy-five to eighty pounds, or a total of about twenty-five tons, upon the agreement that defendant in error should indemnify plaintiff in error for any loss that plaintiff in error might sustain resulting from the storage of said goods; that the defendant in error in placing said nails on said floor did so negligently and carelessly, by reason whereof the said building collapsed and the goods of plaintiff to the value of $4,097.87 were totally destroyed, and that as a direct result thereof plaintiff was obliged to discontinue its business, whereby it suffered further damage in the sum of $15,912.13, making a total loss to it of $20,000.

Plaintiff's claim is set out in two causes of action: first, it seeks to recover the damages arising from the alleged breach of the contract of indemnity; and, second, it seeks recovery on the ground of negligence on the part of the defendant in negligently piling up the nails and in overloading the building.

The defendant admits the placing of the nails on the third floor of the building with the permission of the plaintiff, but denies negligence, and denies that there was an agreement to indemnify plaintiff. The evidence showed that on or about January 13, 1913, the Ohio river was rising rapidly and had begun to flood the cellar and ground floor of said building, and that the defendant, in order to place its goods out of the reach of the rising floods, asked and received permission from some one connected with plaintiff company to remove said nails to the third floor of said building, and did there store or pile them up in the place pointed out for that purpose.

On the trial of the case the jury returned a verdict for the defendant, and judgment was entered thereon; and the plaintiff

Standard Extract Co. v. Belmer Co.

in error now asks this court to reverse said judgment. A bill of exceptions in narrative form and a transcript of the docket and journal entries have been filed as a part of the record.

Counsel for plaintiff in error bases his claim for a reversal on five grounds, which we shall briefly note and pass upon.

First, it is claimed that the trial court erred in his general charge to the jury in failing to state that there might be two concurring acts of negligence which would render the defendant liable. It was claimed by plaintiff that the collapse of the building was due to the negligence of the defendant in the manner in which it piled the kegs of nails on the third floor against the partition wall in too small a space, and in overloading the building greatly beyond the tensile strength of the partition wall; while the defendant denies this alleged negligence, but claims that the building collapsed because of the decay, deterioration, age and imperfect construction of the walls and foundation when it was erected about fifty or sixty years ago, and by reason of the further fact that it had been frequently subjected to the floods of the river and its walls weakened thereby and rendered insecure and unsafe, unknown to defendant until after the collapse. There was evidence tending to establish both of these claims.

In this situation the court in substance charged the jury that if they found that the direct and proximate cause of the collapse of the building was due to the overloading of the third floor by the defendant, and that the defendant was further negligent and careless in overloading said floor by storing its nails in a careless and negligent manner as alleged in the amended petition and in not distributing them about the floor of the room as an ordinarily prudent person would do, then the defendant would be liable for the damages caused to plaintiff's property. The court further charged the jury that if they should find from the evidence that the building collapsed because of the inherent defects in the foundation and walls and not by reason of any act of storing or overloading of the building, then the plaintiff could not recover, as under such circumstances the storing or overloading of the building would not be the proximate cause of the injury to plaintiff.

Plaintiff in error claims that the court erred in the first part of his charge in failing to call the jury's attention to the situation which may have been shown from the evidence, that the collapse might be due to the concurrent causes of the inherent defects in the building and the careless and negligent overloading of the same, and he contends that if such were the case plaintiff would be entitled to recover and that the omission to so charge was such prejudicial error as calls for a reversal of the judgment.

As to this contention it may be said that if plaintiff desired such a charge he should either have asked the court to give it or should have called his attention to the omission, neither of which courses did he pursue, and we believe that he waived this error, if it was error, by his failure to call the court's attention to the omission.

But it is doubtful, to say the least, if plaintiff was entitled to such an instruction, assuming that the evidence clearly established that the collapse of the building was due to these concurrent causes. In the first place, it may be that the inherent weakness of the building was a condition and not a cause; and, secondly, it is quite certain that there is a great conflict of authority whether in such cases the court should not instruct a verdict for the defendant or for the plaintiff. See *Green-Wheeler Shoe Co.* v. *Chicago, R. I. & Pac. Ry.* 130 Ia. 123 [106 N. W. 498; 5 L. R. A. (N. S.) 882; 8 Ann. Cas. 45] ; *Rodgers* v. *Missouri Pac. Ry.* 75 Kan. 222 [88 Pac. 885; 10 L. R. A. (N. S.) 658; 121 Am. St. 416; 12 Ann. Cas. 441].

The facts in these two cases are practically the same, and this was the question to be determined: Was the common carrier of the goods liable for their loss, where there was negligent delay in delivering the goods, and when so delayed an unprecedented flood (an act of God) arose and destroyed the goods? If the goods, in both cases, had been promptly delivered they would have escaped the flood. These two cases were decided directly contrary to one another; in the one case there was an instructed verdict for the plaintiff, and in the other an instructed verdict for the defendant. If the trial court in the case at bar had followed the rule laid down in the Kansas case, *supra,* he would

Standard Extract Co. v. Belmer Co.

have instructed a verdict for the defendant, assuming that the damages were the result of the two concurring causes above mentioned. If the Iowa case, *supra*, had been followed, he would have instructed a verdict for the plaintiff. We think the proper course to have pursued would have been to submit to the jury the question of whether or not the plaintiff's damages were the direct result of the defendant's negligence or were brought about by reason of the collapse of the building from its inherent weakness, or from some other cause. We do not believe that defendant would be liable if the damages were the result of the concurrent causes claimed to have produced the injury. See *Denny* v. *New York Cent. Ry.* 79 Mass. (13 Gray.) 481 [74 Am. Dec. 645] ; *Daniels* v. *Ballantine*, 23 Ohio St. 532 [13 Am. Rep. 264].

For a full discussion of cases of this character, where although the plaintiff was in fault, yet no damage would have resulted but for an occurrence in the natural world which constituted an extraordinary departure from the usual course of nature, see appendix to article by Jeremiah Smith, 25 Harvard Law Review, 321.

We are also of the opinion that the court's charge is not open to the criticism urged, because the court stated to the jury that if the building collapsed because of the inherent defects of the building, etc., and not by any act of storage or overloading of the building, then the plaintiff can not recover, etc. So that, under the charge, if the jury had found that the building collapsed by reason of any act of overloading or storing, they would have been justified in finding for the plaintiff.

Secondly, it is claimed that there was prejudicial error in the court's charge in iteration and reiteration of parts of his charge, thereby giving undue emphasis to parts of the charge. We have read this charge with care, two or three times, and do not find it open to this criticism.

Third, it is claimed that the court erred in submitting to the jury the question of authority or lack of authority of the agent through whom the agreement of indemnity is claimed to have been made on behalf of the defendant. This question was raised by the issues in the pleadings. It was an issuable fact

to be determined by the jury, unless the agency was admitted by the defendant, which it was not.  The business of a corporation is conducted by a board of directors, and the directors are the ones and the only ones, acting as a board, who can bind the corporation.   If it were shown by the evidence that the directors either generally or specifically conferred power and authority on Albert Belmer to enter into this agreement, then his authority as agent for the company would be established; but he had no such authority to enter into an agreement to bind the company without the sanction of the board of directors.  *Bradford Belting Co.* v. *Gibson*, 68 Ohio St. 442 [67 N. E. 888].

As to the fourth ground of complaint, that the court erred in the statement of the pleadings and the presentation of the issues, we are of the opinion that there was no error prejudicial to the plaintiff in this regard.   The burden of proof was not upon the plaintiff to show that the latent defect in the building caused its collapse and the consequent damage to plaintiff.   This might have been shown under a general denial.   See *Cincinnati Trac. Co.* v. *Forrest*, 73 Ohio St. 1 [75 N. E. 818]; *Cincinnati Trac. Co.* v. *Stephens*, 75 Ohio St. 171 [79 N. E. 235].

Fifth, it is contended that the rule laid down by the court as to the measure of damages was wrong.   It must be remembered that it was not for the loss of the goods alone that plaintiff was claiming damages.   This element of damages was but about one-fourth of the amount claimed.   A claim was made for the loss of profits which plaintiff might have realized from its business and we think the court did not err in laying down the rule to govern the jury in computing the damages.

On the review of the whole case, we are unable to say that substantial justice has not been done in this case, and unless we can do so it would appear that it is our duty to affirm the judgment of the trial court; and this is accordingly done.

**Jones (E. H.), and Jones (O. B.), JJ., concur.**